O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ROGELIO PEREZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. L-05-131 |
| | § | |
| JOHN E. POTTER, Postmaster General, | § | |
| | § | |
| Defendant. | § | |

### OPINION AND ORDER

Now pending is Defendant John E. Potter's Motion for Summary Judgment. [Dkt. No. 41]. For the reasons stated herein, such motion is **GRANTED**.

### I.    FACTS AND PROCEDURE

In 1999, Plaintiff Rogelio Perez was tentatively selected for the position of rural carrier associate (RCA) for the United States Postal Service (USPS).[1] Several months later, after a series of medical examinations revealed that he suffered from pre-existing knee problems, USPS informed Perez that he was no longer a candidate for the position. Perez filed a complaint with the Equal Employment Opportunity Commission (EEOC), claiming employer discrimination on the basis of disability, in violation of the federal Rehabilitation Act, 29 U.S.C. § 701 *et seq*. An EEOC Administrative Judge (AJ) found in Perez's favor. The parties cross-appealed to the EEOC. The EEOC affirmed the AJ's finding of discrimination, and awarded Perez: (1) $20,000 in non-pecuniary damages; (2) the position of RCA; (3) attorney fees; and (4) back pay for the "relevant time period"— *i.e.*, the time period during which Perez would have been employed as an RCA had he not been wrongfully passed over. Both parties moved for reconsideration, which the

---

[1] The underlying facts of this case are not in dispute, and are drawn from the Court's Opinion and Order of July 3, 2007, [Dkt. No. 35], as well as the parties' Joint Pretrial Order ("PTO"), [Dkt. No. 40].

EEOC denied.  USPS then instated Perez as an RCA, and paid him the $20,000 in damages, as well as attorney's fees and back pay.

This was not the end of the dispute, however.  Perez subsequently filed a petition for enforcement with the EEOC's Office of Federal Operations (OFO), alleging that USPS had incorrectly calculated the back pay to which he was entitled per the remedial portion of the original EEOC order.  On March 3, 2005, the OFO agreed, and concluded that Perez's worker's compensation benefits could be deducted from his back pay but only insofar as those payments represented the wages he lost as a result of being denied the RCA position.  [Dkt. No. 41, Ex. F, *Perez v. Potter*, 105 F.E.O.R. 297, 105 L.R.P. 10317 (E.E.O.C.-O.F.O, Mar. 3, 2005) (hereinafter "Final Order")]; *see* 29 C.F.R. § 1614.503(a)-(c).  The OFO ordered USPS to conduct a supplemental investigation, to recalculate with specificity the proper measure of back pay and other benefits owed to Perez, and to provide evidence that it had complied with the Final Order within 30 days of it becoming final.  *See* 29 C.F.R. § 1614.502(c).  When USPS recalculated back pay, it concluded that it had actually originally overpaid Perez by several thousand dollars.  Accordingly, it concluded that it owed Perez nothing, and to date has remitted no additional back pay to Perez.  USPS provided Perez with documentation of its decision by certified mail on June 24, 2005.  [Dkt. No. 41-3, Ex. E3].

Having already been informed that USPS would not provide additional back pay, Perez filed suit against Potter in his official capacity as Postmaster General on June 3, 2005.[2]  [Dkt. No. 1].  The relevant question is not whether the Final Order is correct, but rather, whether USPS's revised back pay calculation complied with the Final Order.  [*See* Dkt. No. 35 at 6 (Order of the Court) (reasoning that Perez "may either sue *only to*

---

[2] Because Potter is named in his official capacity, the Court uses "USPS" and "Potter" interchangeably.

*enforce* the remedial provision of the EEOC's order, or he may seek a *de novo* review of both the liability and remedial conclusions of the EEOC") (emphasis in original); Dkt. No. 38 at 2 (Second Amended Complaint) (indicating that Perez seeks "to enforce compliance with the EEOC's order," and does not seek *de novo* review of the finding of discrimination); Dkt. No. 40 at 3-5 (PTO) (indicating that parties contest solely whether USPS properly calculated back pay due to Perez)].[3]   On September 28, 2007, Potter moved for summary judgment on this issue.  [Dkt. No. 41].  Perez opposes such motion, [Dkt. No. 43], and has objected to evidence submitted in support of USPS's motion, [Dkt. No. 42].

## II.   DISCUSSION

Summary judgment is appropriate when, after considering the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All facts and evidence must be taken in the light most favorable to the non-moving party.  *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

The evidentiary standard for summary judgment motions is provided by Federal Rule of Civil Procedure 56(e).  The rule states in part:

> A supporting or opposing affidavit must be made on personal knowledge,
> set out facts that would be admissible in evidence, and show that the
> affiant is competent to testify on the matters stated.  If a paper or part of a

---

[3] Because Perez filed suit prior to USPS filing a final compliance report with the EEOC, administrative processing of his complaint was terminated on June 17, 2005. *See* 29 C.F.R. §§ 1614.409, .503.

> paper is referred to in an affidavit, a sworn or certified copy must be
> attached to or served with the affidavit.

Fed. R. Civ. P. 56(e)(1).  Moreover, in responding to a properly supported motion for summary judgment, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2). If a party does not so respond, summary judgment should be entered.  *See id.*

### A.      Remedies Under the Rehabilitation Act & Timeliness

Under Fifth Circuit precedent, 29 U.S.C. § 794a(a)(1)[4] is the sole method by which one may vindicate a violation of the Rehabilitation Act in federal court; therefore one must utilize the process established in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.  See, e.g.*, *Lamb v. U.S. Postal Serv.*, 852 F.2d 845, 846 (5th Cir. 1988) ("[Section] 2000e-16(a)-(c) . . . provides the exclusive remedy for the employment discrimination claims of federal employees."); *Wiggins v. U.S. Postal Serv.*, 653 F.2d 219, 220 (5th Cir. Unit A 1981) ("Since Wiggins relies for his discrimination claim on . . . the Rehabilitation Act . . . he may seek review of the Board's decision only by filing an action in accordance with section 717(c) of the Civil Rights Act of 1964 . . . ."); *see also Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 n.1 (5th Cir. 1991) ("Although Title VII does not itself prohibit dismissal due to handicap, 29 U.S.C. § 794a explicitly makes available to private litigants the provisions of 42 U.S.C. § 2000e-16 in order to secure remedies for violations of the Rehabilitation Act . . . ."); *Kurth v.*

---

[4]"The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-16), including the application of sections 706(f) through 706(k) (42 U.S.C. § 2000e-5(f)–(k)), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint."

*Gonzales*, 469 F. Supp. 2d 415, 423 (E.D. Tex. 2006) ("The Rehabilitation Act adopts by reference the enforcement scheme and administrative remedies established for federal employees in Title VII cases.") (citations omitted).

The EEOC has authority to enforce § 2000e-16.  *See* § 2000e-16(b).  Here, the parties agree that Perez has followed all applicable EEOC rules and procedures leading up to the OFO's Final Order.  As might be expected, occasionally a complainant who has prevailed in administrative proceedings believes that the agency is not complying with the remedial portion of a final order by the EEOC.  If this is the case, two paths are available to the complainant: further administrative action, or a civil suit in district court. *Compare* 29 C.F.R. § 1614.503[5], *with* 29 C.F.R. §§ 1614.407 & .408; *see also Scott v. Johanns*, 409 F.3d 466, 468-69 (D.C. Cir. 2005).  If a complainant chooses the latter course of action, "the court reviews neither the discrimination finding nor the remedy imposed, examining instead only whether the employing agency has complied with the administrative disposition."  *Scott*, 409 F.3d at 469 (citing *Moore v. Devine*, 780 F.2d 1559, 1563 (11th Cir. 1986)); *Houseton v. Nimmo*, 670 F.2d 1375, 1378 (9th Cir. 1982).

After learning that USPS would not provide him additional back pay, Perez did not seek further administrative relief, but rather, filed this lawsuit to enforce the remedial portion of the Final Order.  Such actions are subject to the statute of limitations set forth in 42 U.S.C. § 2000e-16(c).  This requires that a complainant bring suit "within 90 days of receipt of notice of final action" taken by the agency.  *Id.*; *Wilson v. Pena*, 79 F.3d

---

[5] This is the procedure which Perez initially used to challenge the USPO's calculation of back pay.  To compel recalcitrant agencies to comply with final orders of the OFO, the Director of the OFO may refer the matter to the EEOC or "another appropriate agency."  § 1614.503(d).  The EEOC may then order the head of the agency to show cause why it has failed to comply with the order, or refer the matter to the Office of Special Counsel "for enforcement action."  § 1614.503(e).  Finally, if other measures should fail, the complainant may then bring suit pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the mandamus statute, 28 U.S.C. § 1361, or commence *de novo* proceedings.  § 1614.503(g).

154, 161 (D.C. Cir. 1996); *see also Watkins v. Lujan*, 922 F.2d 261, 263 (5th Cir. 1991) (holding that compliance with statute of limitations is jurisdictional prerequisite to maintaining suit).  Here, USPS sent Perez notice that it would deny him additional back pay, with all supporting calculations, on June 24, 2005.  Perez filed suit preemptively on June 3, 2005; therefore the action is timely.  *See Wilson*, 79 F.3d at 161; *cf. Faulkner v. Bolger*, 655 F. Supp. 712, 714 (E.D. Ark. 1987) (holding that letter setting forth how USPS would calculate back pay owed to complainant constituted "notice of final action").

### B.     Back Pay

As noted, Perez only seeks to enforce the terms of the EEOC Final Order.  Under the Order, USPS must provide Perez with the proper measure of back pay, an integral component of the remedy granted by Title VII and the Rehabilitation Act to a victim of discrimination.  *See* 29 C.F.R. § 1614.501(b)(1)(ii) ("Back pay, computed in the manner prescribed by 5 C.F.R. § 550.805, shall be awarded from the date the individual would have entered on duty until the date the individual actually enters on duty . . . ."); *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 418-19 (1975).  To withstand a motion for summary judgment in an enforcement action such as this, a complainant must present evidence of a genuine issue of material fact that the agency has incorrectly calculated back pay pursuant to a final order by the EEOC, and that any money previously paid to the complainant is less than that to which he is entitled.  *See Thomas v. Potter*, 325 F. Supp. 2d 596, 609-11 (M.D.N.C. 2004); *see also Merriman v. Potter*, 251 F. App'x 960, 964, 2007 WL 3120190, at *3-4 (5th Cir. Oct. 25, 2007) (unpublished) (placing burden on complainant challenging sufficiency of back pay award).

### C.     Application

After discussing the parties' arguments in the following section, the Court holds that the evidence presented by USPS shows the absence of a genuine issue of material fact, and that USPS is entitled to judgment as a matter of law.  Perez's evidentiary objections are meritless.  Moreover, his interpretation of the evidence and Final Order is unpersuasive, and does not undermine the conclusion that no reasonable jury could find that USPS has failed to comply with the EEOC's directive.

As evidence that it has complied with the administrative disposition of Perez's claims, the USPS puts forward a declaration, certain calculations, and deposition testimony by Thomas McGinnity, the USPS officer responsible for recalculating the back pay owed to Perez.  [Dkt. No. 41-2, Ex. E; Dkt. No. 41-3, Ex. E-3, Ex. I].  McGinnity calculated the pay that a comparable employee working as an RCA had received for the period of December 22, 1999 to Febraury 7, 2004, including applicable benefits. McGinnity then subtracted Perez's other earnings for the relevant time period, and from what was remaining, subtracted deductions for taxes and other mandatory contributions. [Dkt. No. 41-3, Ex. E-3].  McGinnity stated during his deposition that he made no deductions for worker's compensation payments received by Perez, because Perez failed to report such payments.  [Dkt. No. 41-4, Ex. I, at 6:8-18].  After recalculating back pay in this manner, McGinnity found that Perez had originally been overpaid by several thousand dollars.  [Dkt. No. 41-2, Ex. E ¶ 6; Dkt. No. 41-3, Ex. E-3].  Therefore, USPS concluded that it was already in compliance with the Final Order and did not need to pay any additional funds to Perez.  USPS notified him of this position on June 24, 2005.

Perez contends that USPS's summary judgment evidence is inadmissible, and requests that the court enter summary judgment in his favor on the question of liability, preserving the question of damages for trial.  [Dkt. No. 42; No. 43 at 2, 7]; *see* Fed. R. Civ. P. 56(d)(2).  Perez mainly objects to USPS's assertion that it originally overpaid Perez, and therefore owes him no additional money.  However, the affidavit by which USPS shows how it complied with the Final Order, that of McGinnity, is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant is competent to testify on the matters stated."  *See* Fed. R. Civ. P. 56(e).  Moreover, a sworn copy of the final notice sent to Perez, including calculations, has been attached.  *See id.*; [Dkt. No. 41-3, Ex. E-3].  Therefore, Perez's laundry list of objections fails to undermine what USPS makes plain: by its accountants' reckoning, it owes Perez nothing.

Rather than do the math himself and show where he believes USPS erred in its calculations, Perez claims that USPS has judicially admitted that it did not comply with the Final Order.  He relies chiefly on McGinnity's deposition testimony.  [Dkt. No. 43 at 1, 3 (citing Dkt. No. 43, Exs. 4, 5 pp. 11:2–13:25)].  Perez also puts forward his own affidavit as evidence that USPS has not complied with the Final Order.  [Dkt. No. 43-4 ¶ 3].  However, Perez's affidavit is plainly a naked legal conclusion upon which Perez is not competent to testify, and therefore is not summary judgment evidence.  *Cf.* Fed. R. Civ. P. 56(e)(1).  If anything, the affidavit only shows that USPS provided no additional funds to Perez, a fact which USPS readily admits.

It is apparent that what Perez characterizes as judicial admissions are actually assertions by McGinnity that (1) Perez's back pay award was not reduced by any

worker's compensation payments; and (2) as an RCA, Perez would not be entitled to certain benefits. As to the first issue, McGinnity testified that while he did not receive any information from Perez regarding his worker's compensation payments, he also did not reduce the back pay award at all to account for worker's compensation. Instead, McGinnity only reduced the back pay award by the taxable income earned by Perez for the relevant time period.[6] In other words, Perez was rewarded for failure to cooperate with USPS or provide documentation of what he had received in the form of worker's compensation payments. In sum, McGinnity concluded that, even with nothing deducted for worker's compensation, Perez was still overpaid.

As to the second claim, Perez relies on the following language from the Final Order: "The Commission is not convinced that RCAs get no benefits." Specially, the EEOC was concerned with annual leave, health insurance, overtime and premium pay, night differentials, and retirement contributions. The EEOC stated:

> As a federal employee, petitioner would have been entitled to receive at least some of these benefits, and so the back pay calculations must include these figures. Therefore, the agency is directed to include an amount that reflects all of the benefits normally given to an RCA, plus the applicable interest. The Commission requests that the agency provide a clear, decipherable explanation as to how it reached its final amount.

At his deposition, McGinnity took the position that, the EEOC's disbelief notwithstanding, RCA's are not contractually entitled to benefits other than overtime pay. Hence, McGinnity testified, no benefits beyond overtime pay were included in the recalculated award. This was not, as Perez's attorney repeatedly insinuated at McGinnity's deposition, because USPS disregarded the Final Order to properly calculate

---

[6] Because worker's compensation payments are not taxable, *see* 26 U.S.C. § 104(a)(1), deducting the taxable income earned by Perez during the relevant time period would not impermissibly reduce his award in contravention of the Final Order.

such benefits.   Rather, McGinnity omitted benefits other than overtime because in the view of USPS, an award calculated in this manner properly "reflects all of the benefits normally given to an RCA."

Given that USPS has properly supported its motion for summary judgment, Perez bears the burden of showing a genuine issue of fact that USPS has improperly calculated back pay.  *See Thomas*, 325 F. Supp. 2d at 609-11; Fed. R. Civ. P. 56(e)(2).  However, Perez has put forward no evidence of miscalculations by USPS, and likewise has put forward no calculations of his own which would indicate the proper measure of back pay to which he believes he is entitled.  More importantly, Perez fails to produce evidence that as an RCA, he would be entitled to annual leave, health insurance, premium pay, night differentials, and retirement contributions.  In short, Perez's response to USPS's motion is insufficient to establish a genuine issue for the trier of fact.  Moreover, Perez simply misconstrues McGinnity's testimony.  Perez claims that McGinnity admitted that USPS did not comply with the Final Order.  McGinnity's testimony actually shows that USPS complied with the Final Order to the full extent possible, despite Perez's failure to cooperate with USPS in determining the proper measure of worker's compensation payments.    The Court holds that no reasonable jury could find that McGinnity's testimony shows noncompliance by USPS.  *See Anderson*, 477 U.S. at 248.

Additionally, it bears emphasizing that Perez has misconstrued the Final Order. The fallacy of Perez's interpretation is that it takes the Final Order as an unconditional requirement that USPS provide payments for annual leave, health insurance, premium pay, night differentials, and retirement contributions.  The Final Order does show that EEOC was skeptical of USPS's assertion that an RCA may not obtain these benefits.

However, the Final Order does not judicially establish that the USPS must award all possible federal benefits to Perez. As the Final Order makes clear, USPS is only required to compensate Perez for the "appropriate benefits" which he was denied as a result of USPS's discrimination. If an RCA is truly not entitled to annual leave, health insurance, premium pay, night differentials, and retirement contributions, it would be legal error to read the Final Order in such a mechanical fashion as to mandate giving benefits to Perez which he would not have earned had he been hired. *Cf. Albemarle Paper*, 422 U.S. at 418-19 (noting that courts must exercise discretion in determining how to "make whole" victims of discrimination); *Gulf States Mfg. v. NLRB*, 704 F.2d 1390, 1400-01 (5th Cir. 1983) ("[A] back pay or restitution order will not be enforced where the result of the enforcement would be to put the worker in a better position than he would have been in without the violation."). It is apparent that Perez has not presented a genuine issue of material fact that he would be entitled to additional benefits as an RCA, and hence was under-compensated by the revised back pay calculations. *Cf. Thomas*, 325 F. Supp. 2d at 609-11. Perez has not even presented evidence to show that USPS was wrong in asserting that it initially overpaid him by several thousand dollars. Therefore, Perez's claim for additional back pay under the Final Order fails as a matter of law.

## III.    CONCLUSION

For the foregoing reasons, Defendant John E. Potter's motion for summary judgment is **GRANTED**.  [Dkt. No. 41].  Perez's objections to evidence submitted in support of Potter's motion are **OVERRULED**.  [Dkt. No. 42].  A separate final judgment will issue.

IT IS SO ORDERED.

SIGNED this 30th day of May, 2008.

Micaela Alvarez
United States District Judge